■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARY JOHN HENDERSON, Appellant.—Appeal from a judgment of the County Court of Delaware County, rendered July 1, 1974, convicting defendant of the crimes of burglary in the third degree and grand larceny in the second degree. Between 4:15 and 4:30 A.M. on October 12, 1973, a witness stated that he observed a car parked near the premises known as the Mason Inn located in Masonville, New York, with its trunk open and two men moving across the lawn of the premises. The owner of the premises testified that sometime between about 11:00 P.M. on October 11, 1973 and 7:00 A.M. on October 12, 1973 the building thereon was broken into and from an office located therein a safe containing at least $5,000 was stolen. The owner further

testified that about *a month before* the incident a filing cabinet in the office had been dusted by a police officer for fingerprints on both sides of the filing cabinet around the drawers and thereafter he and his wife had washed the cabinet with soap and water and put it back in the office. When he and his wife put the cabinet back in the office, it was placed on top of the safe with its right side facing against the wall. The filing cabinet was about 16 to 18 inches wide and had four "big" drawers. When the owner reached the premises on October 12, 1973 the filing cabinet had been moved out of the office. The owner also testified that the defendant was his son's brother-in-law; that his son was in charge of the business and premises for at least one weekend in September before the burglary and theft of October 12; and that he had observed his son and defendant together "conferring" on the business premises. It should be noted at this point that the owner stated that both his wife and his son (defendant's brother-in-law) shared in the management and operation of the business—Inn. The crimes of burglary in the third degree and larceny in the second degree were established by the testimony of the owner of the premises, and the defendant did not contest the occurrence of the crimes. The People had no eyewitness identification of the defendant and so they proceeded upon circumstantial evidence of identity. The primary issue upon this appeal is whether or not there was proof of identity beyond a reasonable doubt on the People's case and, if so, if there was such proof at the end of the entire case. As to identity, the filing cabinet referred to hereinabove is the most important part of the proof. The owner testified that it had been examined for fingerprints prior to the October 12 theft; that he had washed it so as to be rid of the fingerprint dust; but on cross-examination he conceded that he had not observed the police actually dusting the cabinet in the prior event. Karl Bagts, a State policeman, testified that he was the one who had previously investigated at the premises on September 12, 1973. He dusted the filing cabinet "mostly around * * * all four corners" and found a fingerprint which he turned over to the identification bureau at Sidney. No further testimony was offered as to the September 12, 1973 fingerprint. William Meyer, a State policeman, testified that he investigated the incident of October 12, 1973. He dusted the filing cabinet "and found a latent print on the lower right-hand side". The print was on the right side of the cabinet, toward the front thereof and he identified it as one made by the defendant's hand. It is this testimony that puts the defendant at some time near the safe and in the office. As noted hereinabove, Officer Bagts had previously found a fingerprint on September 12, 1973 and thus, the print now identified as defendant's might have been on the file cabinet prior to October 12 and the sole crime charged is October 12, 1973. As to this circumstance, the owner testified that he had washed the cabinet after the September 12, 1973 incident and further he had placed it thereafter with the right side against a wall. Officer Meyer stated that the print was within six inches of the front of the cabinet and the general area is certainly one which Officer Bagts would have checked as being in the four-corner area. The cabinet appeared to be clean to Meyer when he checked it, and he had no way of knowing how long the print had been on the cabinet. He testified that the print could have been there two years or longer based upon experience in finding old prints. Officer Meyer stated that he also found smudges (unclear finger prints) on the cabinet but there is no description of what portion of the cabinet they were on. *No* opinion was elicited from this witness as to what effect washing the cabinet following the September 12, 1973 incident might have in removing fingerprints. Upon the present record the fingerprint could have been placed upon the file cabinet

prior to the incident of October 12, 1973 and prior to September 12, 1973. It is established that a latent print was found on September 12, 1973 and the evidence does not establish that it was not the print of the defendant. Indeed, the record does not establish that any attempt to identify the September 12, 1973 print was undertaken. Upon the present record the mere finding of the defendant's fingerprint does not constitute proof that he was involved in the incident of October 12, 1973. It could have been put on the safe as part of the incident of September 12, 1973. Assuming that the fingerprint of October 12, 1973 is sufficient for identity as to that incident, it would be incumbent upon the People to show that the defendant would not have had any opportunity to have placed it there except as a part of the burglary. The premises consist of a bar and two dining areas for restaurant purposes. The owner testified that the office, apparently a room off one of the dining rooms, had its own door and lock with keys being in the possession of himself, his wife and his son. He conceded that the office was not in his sole custody or control and that "every three to four months we take two or three days off". There is no evidence as to any signs saying "no admittance" or "private" and there is no evidence that it is *continually* locked. The record does not establish any circumstance which would have reasonably excluded entry into the office by a business patron and the owner's testimony indicates that the defendant had lawfully been upon the premises on occasions. The file cabinet was not hidden away and a mere touching thereof would not of itself establish any guilty intent. As noted above, there is no evidence that the cleaning operation described by the owner that occurred on September 12, 1973 would have removed any fingerprints and it is established that at least one print was located on the cabinet at that time. In any event, the location of the cabinet inside an "office" would not in this case exclude access by the defendant and others. While there is nothing to show that the defendant had any business touching the file cabinet, its location before September 12, 1973 is not established in this record and it might have been so placed as to have been inadvertently and innocently touched. To buttress the evidence as to the touching of the file cabinet the prosecution offered the testimony of the branch manager of a bank located in Binghamton. He testified that the defendant had a joint checking account with his bank in his name and the name of Mary A. Henderson. According to his testimony the sums of $60 and $500 were deposited on October 12 and 16, 1973 in that account, but he did not know the identity of the depositor. However, on October 16, 1973 (four days after the burglary) the defendant purchased $2,000 in traveler's checks. The evidence stands uncontroverted that the defendant gambled "on a regular basis". In this particular case there is nothing presented by the prosecution which would make the above sums of money have any particular weight. The deposits in the checking account are unidentified as to source and could have been either the defendant or his wife or anyone else. The People did not establish the means whereby the defendant purchased the traveler's checks—cash or check or transfer of other securities such as savings bonds, etc. The owner had described a loss of $5,000 in cash and the above transactions either singly or together do not reach that amount. Furthermore, the transaction of $2,500 on October 16, 1973 is four days after the theft. In summary, the money transactions indicate neither guilt nor innocence. At the close of the People's case the defendant moved for a dismissal upon the ground that the People had failed to carry their burden of proof. In his oral argument he noted the failure of the People to show a controlled access to the office which would exclude defendant; that other

prints besides defendant's had been found on the cabinet; that the People's expert did not know how long the print had been there; and that the People's alleged proof of recent affluence was meaningless because there was no showing that he otherwise lacked such affluence before October 12, 1973. The motion should have been granted. It is to be noted that either inadvertently or otherwise the People upon their direct examination established through Officer Bagts that his experience in fingerprinting individuals was for the requirement that every person arrested for misdemeanors and felonies had to be fingerprinted and that in 1967 he fingerprinted the defendant. The defendant took an objection which was not recorded in the record, but was renewed at the end of the People's case. At that time he advised the court it was prejudicial as calling to the attention of the jury the fact of a prior arrest. It is academic that the defendant's character was attacked without any legal basis in the testimony of Bagts. Such an error is prejudicial, but the defendant testified and at that time the events of 1967 were properly explored on direct and cross-examination with no basis left for prejudicial error. The People have failed to establish circumstantial evidence on their direct case which so excluded a touching of the filing cabinet from an authorized touching as to be inconsistent with innocence. Taking the record as a whole, the jury could have disbelieved the defendant's account of his whereabouts at the critical time of 4:15 to 4:30 A.M. on October 12, 1973, but his evidence cannot be reached until the People first establish evidence of his presence at the Mason Inn at that time and this was not done beyond a reasonable doubt and/or in such a manner as to "exclude to a moral certainty every reasonable hypothesis of innocence" *(People v Lagana,* 36 NY2d 71, 74). Judgment reversed, on the law and the facts, and indictment dismissed. Sweeney, Mahoney and Herlihy, JJ., concur; Greenblott, J. P. and Reynolds, J., dissent and vote to affirm in the following memorandum by Greenblott, J. P. Greenblott, J. P. (dissenting). We respectfully dissent. Where identity of the perpetrator of a crime is sought to be proven by the presence of his fingerprints at the scene of a crime, it is the duty of the prosecution to produce evidence tending to reasonably exclude the hypothesis that the print was impressed other than at the time of the crime. However, we do not believe this rule to be construed to require the People to affirmatively and conclusively prove that the accused could not have been there at any other time (see *Brunson v State,* 9 Md App 1). It appears to us that on the evidence presented in the case at bar, the majority would require the People to conclusively disprove hypotheses which as a matter of probability are extremely unlikely. The majority puts great weight on the testimony of Officer Meyer. A reading of his testimony in context reveals that the witness merely testified that *a* fingerprint *could* be found more than two years after it was impressed; he did not indicate that the fingerprint found in the present case fit within that description. The majority would conclude, however, that the print might have been an old one because of the absence of testimony as to the effect of washing the cabinet with soap and water. In our opinion, it was possible for the jury to *reasonably* conclude that a fingerprint discovered after the cabinet had been washed had been impressed after the washing (see *Brunson v State, supra; Graves v State,* 119 Tex Cr Rep 68). Assuming, therefore, that the evidence was sufficient to reasonably exclude any possibility that the fingerprint had been placed prior to September 12, 1973, the next question is whether the evidence was insufficient to exclude the possibility that the fingerprint might have been left after September 12 but other than at the time of the crime. While the majority makes much of evidence

tending to show that the office was easily accessible, the defendant himself testified to having been in the office on only one occasion after September 12 (two or three days thereafter), and that on that occasion, he was looking for his brother-in-law, the owner's son, who *was not in the office*. Since, as defendant testified, the person he was seeking was not present, and since other testimony established that the file cabinet was in a back corner of the office, the jury could have reasonably concluded that defendant did not cross to the back corner and innocently touch the cabinet. From that it would reasonably follow that the jury could conclude, to the reasonable exclusion of any other hypothesis, that defendant's fingerprint had been impressed at the time of the crime. We, therefore vote to affirm.